IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| WTGD 105.1 FM, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 5:14cv00015 |
| | ) | |
| v. | ) | |
| | ) | |
| SOUNDEXCHANGE, INC., | ) | By: Hon. Michael F. Urbanski |
| | ) | United States District Judge |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

In this declaratory judgment action, three Harrisonburg FM radio stations ask the court to declare that broadcasts, made via a technology yet to be implemented, are exempt from liability for copyright royalties under sections 112 and 114 of the Copyright Act, 17 U.S.C. § 101 et seq. Plaintiffs' allegations are too speculative, indefinite and hypothetical to allow the court to make a judgment as to whether the proposed broadcasts will result in copyright infringement or not. As a result, the court lacks subject matter jurisdiction, and the case must be dismissed.

I.

The Copyright Act permits radio stations to broadcast copyrighted sound recordings if the broadcast is part of a "retransmission of a nonsubscription broadcast transmission," and the "transmission is not willfully or repeatedly transmitted more than a radius of 150 miles from the site of the [station's] radio broadcast transmitter." 17 U.S.C. § 114(d)(1)(B)(i). Should a station "willfully or repeatedly" retransmit recordings beyond that radius, it must pay for the privilege of using any copyrighted sound recording. 17 U.S.C. §§ 114(d)(1)(B)(i), 114(f)(4)(B). The station can pay royalties either directly to the copyright owner or obtain a statutory license. 17 U.S.C. §§ 112(e)(1), 112(e)(2), 114(f)(3), 114(f)(4)(B). Defendant Sound Exchange, Inc. ("SoundExchange") is a non-profit

organization designated by the Copyright Royalty Board to collect royalties from broadcasters on behalf of copyright owners who join its membership. SoundExchange is the sole collector of royalties due under statutory licenses. 17 U.S.C. § 114(g); 37 C.F.R. §§ 380.4(b), 380.13.

Plaintiffs are three radio stations located near Harrisonburg, Virginia, and their owner, VerStandig Broadcasting. Two of the radio stations, WXPO 100.7 FM and WJDV 96.1 FM, already live stream, or simulcast, their programming over the Internet and pay royalties to SoundExchange under statutory licenses. A third radio station, WTGD 105.1 FM, does not have a statutory license. The stations hope to implement a technology known as geofencing which they claim will allow them to restrict retransmitted broadcasts to listeners physically located within the 150-mile radius. The stations claim that they have not yet implemented this technology due to the substantial financial investment it would require and the unresolved legal question of whether geofencing will exempt them from copyright liability.

On February 28, 2014, counsel for VerStanding Broadcasting wrote SoundExchange a letter indicating that WTGD 105.1 FM "intends to commence internet streaming of its terrestrial radio broadcasts through a process known as 'geofencing.'" Dkt. No. 1-2. Counsel's letter stated that "[w]e believe that once a station constrains or 'geofences' its signal to 150 miles or less, it will conform to the exemption from the statutory license for sound recordings under Section 114 of the U.S. Copyright Act, so that it would owe no payment to SoundExchange." Id. The letter sought confirmation from SoundExchange that counsel's understanding of the Copyright Act's provisions was correct and the plan to simulcast WTGD 105.1 FM's programming using geofencing technology would not subject the station to any legal challenges from SoundExchange. On March 14, 2014, SoundExchange responded that it did not agree with WTGD 105.1 FM's viewpoint of the Copyright Act and provided a citation to a recent decision by the Copyright Office that the 150-mile exemption is not applicable to radio retransmissions over the Internet. Sound Exchange's letter did

2

not mention litigation, yet "strongly urge[d] WTGD to seek licenses for its simulcasts." Dkt. No. 1-3. The stations filed this declaratory judgment action six weeks later.

## II.

SoundExchange filed motions to dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6). The matter was referred to United States Magistrate Judge Joel C. Hoppe for a report and recommendation, and the magistrate judge recommended dismissal of the complaint without prejudice pursuant to Rule 12(b)(1). Dkt. No. 46. Finding no case or controversy, the magistrate judge concluded that the court lacked subject matter jurisdiction. The stations timely filed an objection to the report and recommendation, SoundExchange responded, and the court heard oral argument on October 24, 2014. For the reasons that follow, the court will adopt the report and recommendation of the magistrate judge.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See 28 U.S.C. § 636(b)(1). The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1).

### A.

In his report and recommendation, the magistrate judge recommends granting SoundExchange's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The magistrate judge found that while the parties disagreed as to the interpretation of the Copyright Act, the stations failed to allege any cognizable injury fairly traceable to SoundExchange. Dkt. No. 46 at *15-16. Because the stations seek a declaration that their

3

geofencing technology would make them exempt from the Copyright Act, not just royalties due under the statutory license, the magistrate judge concluded that the proper party defendant would be the copyright owners, not SoundExchange. The injury here, according to the magistrate judge, is the stations' "fear of incurring liability for infringing copyright owners' rights of public performance and reproduction if they simulcast exclusively to their local listeners without first obtaining statutory licenses." Id. at *16. Thus, any cognizable injury under the Copyright Act would be traceable to the copyright owners, not SoundExchange. The magistrate judge also concluded that the letters exchanged between the parties did not create a justiciable controversy.

Plaintiffs object to the magistrate judge's report, contending that because he focused on liability for copyright infringement, he overlooked potential contract liability for the two stations operating under the statutory license. Focusing their objections as they do on the issue of potential contractual liability, the stations effectively abandon any objection to the magistrate judge's report and recommendation as to the claim raised by the one station lacking a statutory license, WTGD 105.1 FM. Under 28 U.S.C. § 636(b)(1), the court must review de novo only "those portions of the report . . . to which objection is made." Because Plaintiffs failed to object to the magistrate judge's analysis as to WTGD 105.1 FM, they have waived any such objection. See United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007). Thus, the court will limit its review only to the issue of the so-called contract based claim as to the other two stations, a claim which was neither raised in the letter giving rise to this suit nor pleaded in the complaint.

**B.**

The Declaratory Judgment Act is not an independent source of jurisdiction and requires an actual case or controversy before a court may declare "the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); see MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007); Skelly Oil Co. v. Phillips Petro. Co., 339 U.S. 667, 671-72 (1950). To

4

determine if a declaratory action is justiciable, the court must consider whether the facts alleged under "'all the circumstances'" demonstrate "'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" MedImmune, 549 U.S. at 127 (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). The minimum requirements of standing and ripeness "can be a helpful guide in applying [MedImmune's] all-the-circumstances test." Prasco, LLC v. Medicis Pharma. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008).

A party has standing when:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Doe v. Obama, 631 F.3d 157, 160 (4th Cir. 2011) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)). A case is ripe for judicial decision "when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (citation omitted).

A declaratory judgment plaintiff suffers an injury when he "abandons that which he claims a right to do" because of "an assertion of rights by the defendant." Alpharma, Inc. v. Purdue Pharma., L.P., 634 F. Supp. 2d 626, 631 (W.D. Va. 2009). Indeed, a plaintiff may have standing if a defendant's conduct "effectively coerced" a plaintiff to avoid an "imminent injury." MedImmune, 549 U.S. at 129-30. This is an objective standard, and a subjective or speculative threat of injury will not suffice. Cooksey v. Futrell, 721 F.3d 226, 236 (4th Cir. 2013). An imminent injury must also "result from the actions of the respondent, not from the actions of a third party beyond the Court's control" in order to confer standing. Doe v. Va. Dep't. of State Police, 713 F.3d 745, 755 (4th Cir. 2013); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42 (1976).

5

## 1.

The magistrate judge concluded that the injury here "was inextricably linked to individual copyright owners' authority to enforce their intellectual property rights." Dkt. No. 46 at *25. The stations believe that the magistrate judge failed to account for the licensor-licensee relationship between two of the radio stations and SoundExchange. The complaint, however, seeks no declaration concerning contractual liability. Rather, the stations ask the court to enter an order

> "[d]eclaring that a live stream of Plaintiffs' FM broadcasts over the Internet only to listeners physically located within 150 miles of each Plaintiff's respective FM transmistter is an exempt transmission or retransmission under 17 U.S.C. § 114(d)(1)(B)(i) . . . [and] not an infringement of any right protected by the Copyright Act[.]"

Dkt. No. 1 at *13. The stations also collectively ask the court to declare "that Plaintiffs need no statutory license under 17 U.S.C. § 114(f) . . . [and] Plaintiffs need no statutory license under 17 U.S.C. § 112." Id.

Nothing about the stations' allegations remotely resembles a contract claim. The stations do not ask the court to interpret or enforce the claimed contract—the statutory license. Rather, they seek a declaration that they will meet an exemption from copyright infringement liability under an exemption in the Copyright Act. Indeed, the complaint alleges that this court has jurisdiction "because this action arises under the Copyright Act," Dkt. No. 1 at *4, and asks the court "to clarify Plaintiffs' rights and obligations under 17 U.S.C. §§ 112 and 114." Id. at *12. The real issue here does not concern the terms of the statutory license entered into by two of plaintiff stations and administered by SoundExchange. Rather, the entire issue focuses on the Copyright Act exemption.

Thus, the magistrate judge neither erred nor failed to address the stations' arguments by focusing his analysis on § 114(d)(1)(B)(i) and concluding that the injury here was not fairly traceable to SoundExchange. Dkt. No. 46 at *16 ("The cognizable injury Plaintiffs seek to avoid through this action is the fear of incurring liability for infringing copyright owners' rights of public performance

6

and reproduction if they simulcast exclusively to their local listeners without first obtaining statutory licenses.") It is of no consequence to this action that two of the stations already have statutory licenses because the real injury these stations seek to avoid is liability for copyright infringement. An order declaring the geofenced simulcasts to be exempt transmissions under § 114(d)(1)(B)(i) would mean that those transmissions would not be liable for royalties under a statutory license. Therefore, the magistrate judge correctly concluded that the threat of injury here is of copyright infringement traceable to the individual copyright owners, rather than breach of the terms of a statutory license administered by SoundExchange.

**2.**

In addition to his conclusion as to standing, the magistrate judge determined that the dispute was not yet ripe, concluding that the complaint failed to "allege facts from which the court can reasonably infer that SoundExchange objectively caused Plaintiffs' uncertainty" as to their legal rights. Dkt. No. 46 at *25. The stations object to this finding and argue that SoundExchange took a "clear position" that they must pay royalties under the statutory license or face imminent litigation. Dkt. No. 49 at *7.

Nothing about SoundExchange's letter "evince[s] a dispute definite and concrete in nature." Alpharma, 634 F. Supp. 2d at 630. SoundExchange's letter does not, as the magistrate judge found, "threaten any legal action against Plaintiffs" or insist that the stations obtain a statutory license and pay royalties to SoundExchange. Dkt. No. 46 at *17. The court agrees with the magistrate judge that, at most, SoundExchange's letter failed to assure the stations they would not face any legal challenges. Such a "refusal to give assurances" does not "create an actual controversy." Prasco, 537 F.3d at 1341.

7

Furthermore, SoundExchange's position that it had no role in a copyright infringement dispute could not be more clear based on the representations it made through counsel at the October 24, 2014 hearing on the objections. Counsel stated:

> Mr. DeSanctis: So VerStandig is saying, "If we geofence our transmission so that we stay within 150 miles, then we're exempt from all copyright." If they're wrong, any copyright owner of any song that they play can sue them for copyright infringement. It's that simple. SoundExchange actually has nothing to do with that.
>
> So if WTGD, which has never filed a notice to take under the statutory license, starts playing music and not paying for it, they may get sued by the copyright owners, not by SoundExchange.
>
> . . . .
>
> Now, if a statutory – if someone who is taking under the statutory license is violating the statutory license in the sense that they're not paying enough . . . SoundExchange can come to you and say, "Hey, you're not paying enough."
>
> . . . .
>
> But if they're wrong on their reading of the law, then any copyright owner of any of the songs they play can sue them for infringement, absolutely. But SoundExchange has nothing to do with it. And it doesn't matter whether they're paying --
>
> The Court: Can't you sue them as well?
>
> Mr. DeSanctis: No.
>
> The Court: Can SoundExchange sue them as well?
>
> Mr. DeSanctis: No. This idea that they are going to get sued by both companies is just not true, and SoundExchange never says that in their briefing. If they are saying that a certain song is entirely exempt from copyright altogether, what would it matter for SoundExchange to come in and say, "Hey, you owe us under the statutory license"?
>
> . . . .
>
> But if a company – if a broadcaster is saying "What I'm playing is not subject to anything, and I'm not paying anything," then SoundExchange really has no role in that dispute.
>
> . . . .

8

> But if they make that argument and they are wrong, then they can be sued for copyright infringement by any owner of the copyrights of any song they play, and SoundExchange will have nothing to do with that suit.

October 24, 2014 Hr'g Tr., Dkt. No. 56, at 23:11-20; 24:5-10; 27:19-28:7; 29:8-11; 29:20-24. Counsel further stated in the hearing "SoundExchange has taken the position that if you are claiming to be exempt from all copyright, that is not SoundExchange's issue and they won't sue them." Id. at 44:7-10. Counsel responded to the court's questioning in the following manner:

> The Court: And if they go ahead and do it, and they go ahead and they retransmit digitally over the Internet within a 150-mile range, SoundExchange isn't going to sue them.
>
> Mr. DeSanctis: That's right. Section 114 is all about exemptions to the Copyright Act, to Section 106.

Id. at 46:6-11. Based on these clear representations by counsel, the court is convinced that the parties' positions in this case does not begin to approach the level of a Prasco "refusal to give assurances" case, much less represent an actual case or controversy.

**3.**

At the close of the October 24, 2014 hearing, Plaintiffs' asked the court for leave to amend the complaint in order to plead the unstated breach of contract claim. This the court cannot do, as granting leave to amend would be futile. Equal Rights Ctr. v. Niles Boston Assocs., 602 F.3d 597, 602-03 (4th Cir. 2010) (a district court may deny leave to amend if amendment would be futile). The magistrate judge assumed as true the stations' allegation that the geofencing technology would successfully prevent streaming retransmissions from being received outside the 150-mile radius. The problem with that assumption is that there is simply no way for the court to determine whether the 150-mile exemption from copyright liability is going to apply or not. The stations have not implemented this technology, nor is there any allegation that any other broadcaster has done so.

9

In other words, at this point, there are no facts alleged upon which the court could decide whether or not broadcasts done via this as yet untried technology will fall within the 150-mile statutory exemption. Absent the existence of facts as to whether the proposed geofenced retransmissions "willfully or repeatedly" transgressed the 150-mile boundary, there is no actual case or controversy to decide. The stations seek an advisory opinion on a hypothetical set of facts, a request which exceeds the court's authority under Article III.

In <u>MedImmune</u>, the Supreme Court explained the requirements for a declaratory judgment action. Such actions require

> that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be on a hypothetical state of facts."

<u>MedImmune</u>, 549 U.S. at 127 (quoting <u>Aetna Life Ins. Co. v. Haworth</u>, 300 U.S. 227, 240-41 (1937)). <u>MedImmune</u> involved a patent licensee and a licensor in the pharmaceutical industry. <u>Id.</u> at 121. When the parties entered into their agreement, it "covered an existing patent" and a "then-pending patent application" which was subsequently approved. <u>Id.</u> Upon the second patent's approval, the licensor informed the licensee that it now owed royalties for the newly approved patent pursuant to the license agreement. <u>Id.</u> The licensee disagreed that the new patent covered its product which "accounted for more than 80 percent of [the licensee's] revenue from sales" and sought declaratory relief. <u>Id.</u> at 122. Thus, "the factual and legal dimensions of [that] dispute [were] well defined" in <u>MedImmune</u>, because the licensee already had a product on the market that accounted for almost all of its gross revenue, and the licensee and licensor disagreed as to whether the licensee owed royalties on the sales of that product. <u>Id.</u> at 128.

Likewise, in <u>Alpharma, Inc. v. Purdue Pharma L.P.</u>, the defendant in that case was a patent holder in the field of prescription pain medication. <u>Alpharma</u>, 634 F. Supp. 2d at 628. The plaintiff

10

had formulated and "continued to develop" a drug that the defendant believed was "encompassed" by its patents. Id. Despite this disagreement, the plaintiff "produced commercial quantities of the drug and . . . assembled a marketing and sales team. As a result, the plaintiff . . . invested approximately $40 million in [the drug's] success." Id. at 629. Those acts constituted the necessary "'meaningful preparation'" to "demonstrate that the dispute between the plaintiff and defendant [was] sufficiently immediate." Id. at 631 (quoting Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 881 (4th Cir. 2008)).

In contrast, the stations have done little or nothing to demonstrate that geofencing is anything more than a pipe dream. The stations have done nothing to implement the technology or demonstrate that geofenced retransmissions will meet the § 114 exemption. Rather, they allege only that they have "consulted with geo-fencing experts and service providers." Compl. ¶ 35.

The stations have made no showing of a concrete and definite, real and immediate dispute that authorizes federal court jurisdiction under Article III. Section 114(d)(1)(B)(i) provides an exemption for transmissions that are "not willfully or repeatedly retransmitted more than a radius of 150 miles from the site of the [station's] broadcast transmitter." Given the tenuous and anticipatory nature of the allegations in this case, there are no facts alleged which will enable the court to make any judgment as to whether the proposed retransmissions will fall within this exemption. In essence, the stations ask the court to assume that geofencing of Internet broadcasts can keep signals within 150 miles of their broadcast transmitters and to render an advisory opinion based on those assumed facts. Given the hypothetical nature of the stations' allegations, this the court cannot do.

### III.

After a de novo review of the magistrate judge's report and recommendation, the court is of the opinion that it should be adopted. The real injury at issue here is the fear of liability for copyright infringement, and that injury is not traceable to SoundExchange, a collector and

11

distributor of royalties due under statutory licenses it administers. Further, the correspondence between the parties does not suggest the existence of a justiciable case or controversy between WTGD 105.1 FM and SoundExchange. SoundExchange's letter does not mention copyright infringement, much less threaten a lawsuit. Rather, it simply states SoundExchange's position that the 150-mile exception does not apply to Internet retransmissions and urges the non-licensed station to seek licenses for its simulcasts. SoundExchange, by counsel, confirmed in open court that SoundExchange had no role in the assertion of a copyright claim should the stations actually implement the geofencing technology and rebroadcast copyrighted material over the Internet. Over and over again, SoundExchange reiterated that it had no ability to bring a copyright infringement action should the stations implement geofencing as a means to avoid paying copyright royalties. Finally, the court will not grant the stations leave to amend because they have made no showing of a concrete and definite, real and immediate dispute authorizing jurisdiction under Article III. The stations cannot fabricate an Article III case or controversy by doing nothing more than having their counsel write a letter seeking confirmation of their own legal opinion. As such, the stations' claim does not present an actual case or controversy over which this court has jurisdiction, and the case must be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1). See Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. Open Band at Broadlands, LLC, 713 F.3d 175, 185 (4th Cir. 2013).

    An appropriate Order will be entered this day. The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

Entered: February 13, 2015

*Michael F. Urbanski*

Michael F. Urbanski
United States District Judge